UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON NATIONAL BANK,

    Plaintiff,

v.

PERE MARQUETTE BUILDERS, L.L.C., et al.,

    Defendants.
_____/

Case No. 1:23-cv-1106

HON. JANE M. BECKERING

## MEMORANDUM OPINION AND ORDER

In October 2023, Plaintiff The Huntington National Bank (Huntington), filed this diversity action against Defendants Pere Marquette Builders, L.L.C. (PMB); Scot Latimer (Latimer); and Quality Construction and Excavation, Inc. (Quality). Huntington alleges six claims related to the alleged failure of PMB and Latimer to repay several outstanding balances owed to Huntington, including a claim for appointment of a receiver. Now pending before the Court is Huntington's Motion for Appointment of Receiver (ECF No. 21). For the following reasons, the Court grants the motion.

### I. BACKGROUND

#### A. Factual Background

*Note A.* PMB is a Michigan limited liability company, and Latimer is PMB's resident agent, manager, and sole member (Compl. [ECF No. 1] ¶ 3). On October 1, 2018, PMB and Latimer jointly and severally executed a promissory note in favor of Chemical Bank, which is now held by Huntington, in the principal sum of $42,000.00 ("Note A" [ECF No. 1-2]) (Compl. ¶ 9).

Huntington alleges that PMB and Latimer failed to repay the outstanding balances owed pursuant to Note A as and when agreed (*id.* ¶ 10). Huntington made demand of PMB and Latimer for the immediate repayment of the outstanding balance owed pursuant to Note A, but PMB and Latimer failed to honor the demand (*id.* ¶ 11). Huntington alleges that as of September 29, 2023, a principal balance of $24,294.09 was owed by PMB and Latimer, jointly and severally, to Huntington pursuant to Note A, together with unpaid interest of $238.89, a prepayment fee of $242.94, and late charges of $23.41, for a total of $24,799.33, exclusive of additional contractually agreed upon costs and fees (*id.* ¶ 12).

*Note B.* On December 6, 2017, PMB executed a promissory note in favor of Chemical, which is now held by Huntington, in the principal sum of $225,000.00, as modified by an Amendment to Note dated effective as of December 6, 2018 (collectively, "Note B" [ECF Nos. 1-3 & 1-4]) (*id.* ¶ 15). According to Huntington, PMB also failed to repay the outstanding balances owed pursuant to Note B as and when agreed (*id.* ¶ 16). Huntington made demand of PMB for the immediate repayment of the outstanding balance owed pursuant to Note B, but PMB has failed to honor the demand (*id.* ¶ 17). Huntington alleges that as of September 29, 2023, a principal balance of $217,500.00 was owed by PMB to Huntington pursuant to Note B, together with unpaid interest of $86,922.94 and fees of $1,928.00, for a total of $306,350.94, exclusive of additional contractually agreed upon costs and fees (*id.* ¶ 18).

*Note C.* On October 27, 2017, PMB executed a promissory note in favor of Chemical, which is now held by Huntington, in the principal sum of $47,200.00 ("Note C" [ECF No. 1-5]) (*id.* ¶ 21). According to Huntington, PMB also failed to repay the outstanding balances owed pursuant to Note C as and when agreed (*id.* ¶ 22). Huntington made demand of PMB for the immediate repayment of the outstanding balance owed pursuant to Note C, but PMB has failed to

honor the demand (*id.* ¶ 23). Huntington alleges that as of September 29, 2023, a principal balance of $27,262.29 was owed by PMB to Huntington pursuant to Note C, together with unpaid interest of $703.90, late charges of $51.42, and fees of $34.00, for a total of $28,051.61, exclusive of additional contractually agreed upon costs and fees (*id.* ¶ 24).

***The Guaranty.*** On October 27, 2017, in consideration of the extensions of credit to PMB, Latimer executed a Commercial Guaranty of repayment of the indebtedness of PMB to Chemical, which is now held by Huntington (the "Guaranty" [ECF No. 1-6]) (*id.* ¶ 27). Huntington made demand of Latimer for the immediate repayment of the outstanding balances owed pursuant to the Guaranty of repayment of Notes B and C, but Latimer failed to honor the terms of the Guaranty (*id.* ¶¶ 28–29). Huntington alleges that as of September 29, 2023, an aggregate principal balance of $244,762.29 was owed by Latimer pursuant to the Guaranty of Notes B and C, together with unpaid interest of $87,626.84; fees of $1,962.00; and late charges of $51.42, for a total of $334,402.55, exclusive of additional contractually agreed upon costs and fees (*id.* ¶ 30).

***The Mortgages.*** Also on October 27, 2017, in consideration of the extensions of credit and to secure the repayment of Notes A, B, and C, PMB executed a mortgage in favor of Chemical, which is now held by Huntington, encumbering real property commonly known as vacant land on Sherman Road in Ludington, Michigan (the "2017 Sherman Road Property") (the "2017 Mortgage" [ECF No. 1-7]) (*id.* ¶ 33). The 2017 Mortgage was recorded by the Mason County Register of Deeds on October 31, 2017 (*id.*). Additionally, on October 1, 2018, in consideration of the extensions of credit and to secure the repayment of Notes A, B, and C, PMB executed a mortgage in favor of Chemical, which is now held by Huntington, encumbering real property commonly known as vacant land on Sherman Road in Ludington, Michigan (the "2018 Sherman Road Property") (the "2018 Mortgage" [ECF No. 1-8] and together with the 2017 Mortgage,

3

collectively, "the Mortgages") (*id.* ¶ 34). The 2018 Mortgage was recorded by the Mason County Register of Deeds on October 4, 2018 (*id.*). Huntington alleges, upon information and belief, that Quality may also have recorded liens upon the 2017 Sherman Road Property and the 2018 Sherman Road Property, mortgages that are subordinate to the priority of Huntington's Mortgages (*id.* ¶ 39). Huntington alleges that the value of the 2017 Sherman Road Property and the 2018 Sherman Road Property is less than the balances owed to Huntington pursuant to Notes A, B, and C and the Guaranty (*id.* ¶ 41).

### B. Procedural Posture

On October 17, 2023, Huntington filed this action, alleging the following six claims:

I. Breach of $42,000.00 Note
II. Breach of $225,000.00 Note
III. Breach of $47,200.00 Note
IV. Breach of the Guaranty
V. Judicial Foreclosure
VI. Appointment of Receiver

(ECF No. 1).[1] Defendants were served with the Complaint but have failed to appear. *See* ECF Nos. 6–8. Defaults were entered as to all three Defendants (ECF Nos. 14 & 19), although Huntington has not yet moved for a default judgment. On January 24, 2024, Huntington filed the motion at bar for an appointment of a receiver (ECF No. 21), nominating M. Shapiro Management Company to serve as the Court-appointed receiver (*id.* at PageID.97). Given the procedural posture of this case, no responses to the motion are expected. Having considered Huntington's submission, the Court concludes that oral argument is not necessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

---

[1] Huntington indicates that it named Quality as a Defendant in this suit "for notice purposes" (ECF No. 21 at PageID.94).

## II.  ANALYSIS

### A.  Motion Standard

Equity receiverships are "increasingly rare," but there is a class of cases in which a federal court may exercise its equitable powers and institute a receivership over disputed assets in a suit otherwise falling within the federal court's jurisdiction, but which falls outside the statutory bankruptcy proceedings or other legislated domain.  *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006).  "Given a receivership's origins in equity, few laws delineate its scope." *Digital Media Sols., LLC v. S. Univ. of Ohio, LLC*, 59 F.4th 772, 778 (6th Cir. 2023).  As the Sixth Circuit points out, Federal Rule of Civil Procedure 66 provides merely that "the practice in administering an estate by a receiver or similar court-appointed officer must accord with the historical practice in federal courts or with a local rule."  *Id.*  (citing FED. R. CIV. P. 66 and also directing attention to 28 U.S.C. § 959(b) (instructing that a "receiver … appointed in any cause pending in any court of the United States … shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof")).

The Sixth Circuit has indicated that "[a] district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court." *Liberte, supra.*  The Sixth Circuit has also indicated that "[t]he receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Id.* According to the Sixth Circuit, "[a] receivership is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of clear necessity to protect plaintiff's

5

interests in the property.'" *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (citation omitted).

In deciding whether to appoint a receiver, district courts consider a number of factors, including (1) "whether the property at issue is in 'imminent danger of ... being lost, concealed, injured, diminished in value, or squandered,'" (2) "whether the defendant engaged in fraudulent conduct," (3) "'the inadequacy of the available legal remedies,'" (4) "the lack of less drastic equitable remedies," and (5) "the likelihood that the appointment will do more good than harm." *Id.* (citation omitted). District courts also consider "whether there is inadequate security for a debt and whether a debtor is insolvent." *Id.* at 414–15. Indeed, the Sixth Circuit has opined that "[t]he inability of a receivership estate to meet all of its obligations is typically the sine qua non of the receivership." *Liberte*, 462 F.3d at 552. The Sixth Circuit reviews a district court's order of appointment for an abuse of discretion. *Pension Ben.*, 630 F. App'x at 414.

## B. Discussion

Huntington seeks the appointment of a receiver for the mortgaged properties—the 2017 Sherman Road Property and the 2018 Sherman Road Property—and "all payments, leases, rents, books and records, deposits, bank accounts and other personal property, tangible or intangible, that is used or usable or related thereto" (collectively, the "Receivership Property"). Huntington has supplied a proposed Order for Appointment of Receiver that would allow the receiver to "immediately take possession and control of the Receivership Property, and to manage, recommend, and consummate the sale of same (subject to the approval of the Court), as the Receiver deems appropriate"; and otherwise exercise the powers and duties set forth in the proposed order, including removing any officer of PMB from managing the Receivership Property and taking custody of all documents, books, and materials related to the Receivership Property;

preparing and maintaining books, records and financial reports of the Receivership Property; purchasing insurance; and paying all real estate and personal property taxes (ECF No. 21-2). The Court finds that the balance of the factors weighs in favor of appointing a receiver.

Relevant to the first factor, whether the properties at issue are in imminent danger of being "lost, concealed, injured, diminished in value, or squandered," Huntington represents that PMB has not paid the real estate taxes assessed against these properties (ECF No. 21 at PageID.95, citing Pl. Ex. 10 [ECF No. 21-11]). PMB contractually agreed in the Mortgages that "[a]ny failure of [PMB] to pay any taxes assessed against the Property … shall constitute waste and shall entitle [Huntington] to the appointment by a court of competent jurisdiction of a receiver of the Property for the purpose of preventing the waste" (Mortgages, Pl.'s Exs. 7 & 8, ECF No. 21-8 at PageID.150, ECF No. 21-9 at PageID.164). *See* MICH. COMP. LAWS § 600.2927(1) ("The parties to any mortgage … may, by agreement therein contained to that effect, provide that the failure of the mortgagor or grantor, as the case may be, to pay any taxes assessed against such property or installments thereof … constitutes waste.").

The parties further agreed that the receiver "shall exercise control over the Property to the extent ordered by the court" and that such court "may also appoint a receiver for the Property in any other circumstances permitted by law" (Mortgages, Pl.'s Exs. 7 & 8, ECF No. 21-8 at PageID.150, ECF No. 21-9 at PageID.164). The parties further agreed that Huntington "shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the costs of the receivership, against the Indebtedness." *Id.*

The Court finds that the current status of the properties, which appear vulnerable to loss by tax foreclosure, strongly weighs in favor of appointing a receiver, as contemplated by the parties in the Mortgages. *See, e.g., PNC Bank, Nat. Ass'n v. Goyette Mech. Co.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014) (finding that the parties' advance consent to the appointment of a receive is a strong factor weighing in favor of appointing one); *Fed. Nat. Mortg. Ass'n v. Mapletree Invs. Ltd. P'ship*, No. 10-CV-10381, 2010 WL 1753112, at *3 (E.D. Mich. Apr. 30, 2010) (same).

There is nothing in the record to indicate that any Defendant engaged in fraudulent conduct, which is the second factor district courts consider in deciding whether to appoint a receiver.

Relevant to the third and fourth factors, the inadequacy of available legal remedies or less drastic equitable remedies, Huntington indicates that as of December 21, 2023, the aggregate sum of $362,840.07 is owed pursuant to Notes A, B, and C, and the Guaranty, exclusive of contractually agreed upon costs and attorneys' fees incurred by Huntington, with additional interest accruing on the outstanding principal balance at the rate of $68.63 per day (ECF No. 21 at PageID.94). In contrast, the value of each property is approximately $80,000, *see* Pl. Ex. 11 (ECF No. 21-12), which is inadequate security for the debt to Huntington. As noted, the Sixth Circuit has observed that inadequate security is the sine qua non of a receivership. A receiver will be positioned to protect, if not realize, the value of the properties. *Cf. Liberte*, 462 F.3d at 551 n.2 ("A receiver is an indifferent person between parties, appointed by the court to receive the rents, issue, or profits of land, or other thing in question, pending the suit, where it does not seem reasonable to the court that either party should do it.") (quoting 1 Clark on Receivers § 11(a) (3d ed. 1959)).

Turning to the last factor, the Court determines that the current record supports the conclusion that the appointment will likely do more good than harm. As Huntington points out, the financial position of PMB/Latimer appears "precarious," given their failure to pay their

obligations to Huntington and to timely pay property taxes (ECF No. 21 at PageID.96), which jeopardizes the parties' mutual interest in the properties.  Defendants, by virtue of their non-appearances in this case, have not quelled concerns that the property is vulnerable.  Instead, once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint, except those relating to the amount of damages.  *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 403 (6th Cir. 2022); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995).

In sum, having considered the relevant factors, the Court, in its discretion, will grant Huntington's motion for appointment of a receiver.

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Appointment of Receiver (ECF No. 21) is GRANTED.

A separate Order for Appointment of Receiver will enter.

Dated:  February 2, 2024               /s/ Jane M. Beckering
                                       JANE M. BECKERING
                                       United States District Judge